IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SHALONDACOGDELL@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE, INC. | Misc No. _____ <br><br> **UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Michael I. Jones, a Special Agent (SA) of the District of Columbia Office of the Inspector General (DC-OIG), after being duly sworn, depose and state:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant for information associated with an email account, SHALONDACOGDELL@GMAIL.COM (the "Subject Account"), that is stored at premises controlled by Google, Inc. ("Google"), an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Title 18, United States Code, Sections 2703(a), (b)(1)(A), and 2703 (c)(1)(A) to require the service provider to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

1

2. I am a Special Agent with the DC-OIG. I am an investigative or law enforcement officer of the District of Columbia within the meaning of D.C. Code § 1-301.115a and Title 18 United States Code § 2501(7); that is, an officer of the District of Columbia who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in the United States Code and D.C. Code. I am assigned to the Investigations Division of the DC-OIG. I am responsible for investigating fraud, waste, mismanagement and abuse of District of Columbia government resources, in addition to criminal violations that arise as a result of my investigations. I have been so employed with DC-OIG since January 2014. I am a graduate of the University of Maryland, with a Bachelor of Science degree in Criminology/Criminal Justice, and of the American Military University, an entity of the American Public University System, with a master's degree in Criminal Justice. I am also a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program. Prior to joining DC-OIG, I served for four years as a SA with the United States Department of State, Bureau of Diplomatic Security. During that time, I conducted numerous investigations including, but not limited to, fraud against the United States, and assisted with probable cause searches and arrests applicable to violations of United States, District of Columbia, state and local laws.

3. The facts and information contained in this affidavit are based on my personal knowledge and observations, my review of records and documents obtained during this investigation, information received from other individuals, including witnesses and members of other law enforcement agencies, and my experience and training as a SA.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2. I am a Special Agent with the DC-OIG. I am an investigative or law enforcement officer of the District of Columbia within the meaning of D.C. Code § 1-301.115a and Title 18 United States Code § 2501(7); that is, an officer of the District of Columbia who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in the United States Code and D.C. Code. I am assigned to the Investigations Division of the DC-OIG. I am responsible for investigating fraud, waste, mismanagement and abuse of District of Columbia government resources, in addition to criminal violations that arise as a result of my investigations. I have been so employed with DC-OIG since January 2014. I am a graduate of the University of Maryland, with a Bachelor of Science degree in Criminology/Criminal Justice, and of the American Military University, an entity of the American Public University System, with a master's degree in Criminal Justice. I am also a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program. Prior to joining DC-OIG, I served for four years as a SA with the United States Department of State, Bureau of Diplomatic Security. During that time, I conducted numerous investigations including, but not limited to, fraud against the United States, and assisted with probable cause searches and arrests applicable to violations of United States, District of Columbia, state and local laws.

3. The facts and information contained in this affidavit are based on my personal knowledge and observations, my review of records and documents obtained during this investigation, information received from other individuals, including witnesses and members of other law enforcement agencies, and my experience and training as a SA.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 1343 (Wire Fraud), 1341 (Mail Fraud), 666 (Theft of Public Money, Property or Records), 201 (Bribery), 371 (Conspiracy) and 1028A (Aggravated Identity Theft) have been committed by Shalonda Codell and others known and unknown to the government. There is also probable cause to search the information described in Attachment A for evidence, fruits, and instrumentalities of these crimes, as described in Attachment B.

**JURISDICTION**

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated," 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. See 18 U.S.C. § 3237.

7. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

**BACKGROUND OF INVESTIGATION INTO FUNDAMENTALS FOR ACHIEVEMENT AND DCPS COMPENSATORY EDUDCATION PROGRAM**

8. The District of Columbia Public Schools (DCPS) Compensatory Education Program (Comp. Ed.) awards services to eligible students to assist with their educational needs and development. Students awarded Comp. Ed. services have learning, mental and/or behavioral disabilities that create an educational barrier that prevents the student from reaping the full benefit of his/her education. Comp. Ed. services may consist of tutoring, individualized education, mentoring, speech therapy, occupational therapy, and behavioral and psychological

3

analysis. Once DCPS deems it appropriate for a student to receive Comp. Ed. services, it sends a notification letter to the student's parent or guardian specifying the Comp. Ed. services awarded to their child (Comp. Ed. Letter). The parent or guardian is responsible for identifying an independent provider to perform the services described in the Comp. Ed. Letter. After performing the approved services, a service provider submits two documents to DCPS: (1) a timesheet reflecting the name of the child for whom services were performed, the tutor/mentor who performed the services, the number of hours worked, the signature of the parent/guardian, and the signature of the tutor; and (2) an invoice reflecting the total amount due from one or more timesheets for which the service provider seeks payment. The service provider also routinely submits a copy of the corresponding Comp. Ed. Letter with the initial invoice submitted for that student.

9. Fundamentals for Achievement, LLC (FFA) is a limited liability company owned by John Faulkner and incorporated in the state of Maryland on August 29, 2011. On September 20, 2011, FFA became an approved DCPS vendor for the Comp. Ed. program. As a Comp. Ed. vendor, FFA was eligible to provide educational services to DCPS students including, but not limited to, mentoring and tutoring.

10. On behalf of FFA, Faulkner hired people to conduct tutoring and mentoring services for DCPS students. Beginning in 2011, Faulkner, on behalf of FFA, submitted invoices to DCPS for purported services rendered to DCPS students by FFA.

11. DCPS Compliance Case Managers (CCM) had access to DCPS students' Hearing Officer Determination (HOD), Settlement Agreements, and Individualized Education Plans (IEPs). Additionally, CCMs ensured that DCPS fully implemented a student's HOD, Settlement Agreement, and/or IEP. A CCM also ensured that parents of DCPS students who received

Comp. Ed. services were aware of their award and how to obtain the services of independent providers for their child.

12. Isaiah Johnson is a former CCM. He is suspected of conspiring with Faulkner and others to submit fraudulent invoices to DCPS for Comp Ed. services that were never performed.

13. Shalonda Cogdell has been a CCM with DCPS since April 2013. Cogdell's personal email address is believed to be the Subject Account.

## **PROBABLE CAUSE**

14. An investigation conducted by DC-OIG and the Federal Bureau of Investigation has revealed that Faulkner and others known and unknown to the government engaged in a scheme to defraud the DCPS Comp. Ed. program. Specifically, the investigation has revealed instances in which Faulkner assigned a FFA employee to provide services for a student who had received a Comp. Ed. Letter but then inflated the number of hours listed on the timesheet submitted to DCPS. In other instances, FFA did not provide any services to a student and Faulkner submitted timesheets to DCPS representing that services were performed. The Subject Account was used to provide Faulkner and Johnson with Comp Ed. Letters that investigators believe were subsequently used to defraud the Comp. Ed. Program.

15. All of the timesheets submitted to DCPS by Faulkner, some of which are described in more detail below, listed FFA's address as 2828 10th St., NE, Washington, D.C. 20017. All of the timesheets identified "John A. Faulkner, Jr." as the supervisor of the mentor/tutor listed.

16. On March 7, 2017, this Court issued a search warrant for information associated with the email account JAFE1616@gmail.com ("Faulkner's Gmail Account"), which is believed

to have been used by Faulkner.  Investigators reviewed the contents of this email account, some of which are described herein.

17.    On December 18, 2012, the Subject Account, believed to be used by Cogdell, sent an email to Faulkner's Gmail Account with the subject "AB0C5507.PDF."  The message in the body of the email reads in part, "This is a demonstration that doesn't need anything.  You can call me at 704/713-3108.  Thanks."  Attached to the email was a Comp. Ed. Letter for DCPS student N.L signed by Cogdell.

18.    On December 10, 2014, investigators including your affiant interviewed Parent A, and Parent A's child N. L.  During the course of the interview, your affiant showed Parent A and N.L. copies of FFA timesheets and a Comp. Ed. Letter submitted to DCPS along with FFA invoices requesting payments totaling $6,405.00, for services rendered to N.L.  The FFA timesheet indicated that Person A, a FFA tutor, provided services to N.L., pursuant to N.L.'s Comp. Ed. Letter.  The dates of services listed on FFA's timesheets indicated that purported services began in or around November 2012 and ended in or around January 2013.  In total, the FFA timesheets reflected that N.L. received 72 hours of independent tutoring.  Parent A and N.L. stated that N.L. did not receive any services from Person A, Faulkner, FFA, or any individuals associated with FFA.  Parent A stated that she never received a Comp. Ed. Letter for N.L.  Additionally, Parent A stated that the signature that appears on the FFA timesheets was not hers.  Your affiant queried DCPS's student records databases and did not identify a Comp. Ed. Letter for N.L.

19.    On January 25, 2013, the Subject Account sent an email to Faulkner's Gmail Account with subject "V. Fong."  The message in the body of the email reads, "I'm going to send you the information for this student once I confirm with parent.  I can authorize an hour just

for you to consult with student/parent to make sure these services can be provided. If services can be provided you can contact me so that I can authorized the correct amount of hours that's needed."

20. On February 6, 2013, using the Subject Account, Cogdell sent Faulkner an email in which Cogdell wrote, "I'll be meeting with several schools within the next week in regards to com Ed services owed. Is it possible I can get brochures from your company to insert into folders that will be given to the parents." On the same date, Faulkner replied to Cogdell's email, "Yes, I will get them to you ASAP. Thanks."

21. On August 9, 2013, Faulkner sent an email to the Subject Account. Attached to the email were signed Comp Ed. Letters, including for DCPS students S.J. and C.H.

22. On February 17, 2017, Parent B, parent of S.J., was interviewed by investigators. During the interview, Parent B was provided with a copy of FFA timesheets and a Comp. Ed. Letter submitted to DCPS along with FFA invoices requesting payments totaling $6,405.00, for services rendered to S.J. The FFA timesheet indicated that Person B, a FFA Tutor, provided services to S.J. pursuant to S.J.'s Comp. Ed. Letter. The Comp. Ed. Letter was dated April 10, 2013, and was issued and signed by a DCPS CCM. The dates of services listed on FFA's timesheets indicated that purported services began in or around May 2013 and ended in or around October 2013. In total, the FFA timesheets reflected that S.J. received 105 hours of independent tutoring. Parent B stated to investigators that S.J. did not receive any services from Person B, Faulkner, FFA, or any individuals associated with FFA. Parent B also stated that she never received a Comp. Ed. Letter for S.J. Additionally, Parent B stated that the signature that appears on the FFA timesheets was not her signature. Your affiant queried DCPS's student records databases and did not identify a Comp. Ed. Letter for S.J.

23.     On December 10, 2014, Parent C, Parent of C.H., was interviewed by investigators. During the interview, Parent C was provided with a copy of FFA timesheets and a Comp. Ed. Letter submitted to DCPS along with FFA invoices requesting payments totaling $3,787.50, for services purportedly rendered to C.H. The FFA timesheet indicated that Faulkner provided independent counseling and tutoring services to C.H. pursuant to C.H.'s Comp. Ed. Letter. The Comp. Ed. Letter was dated March 27, 2013, and was issued and signed by a DCPS CCM. The dates of services listed on FFA's timesheets indicated that purported services began in or around October 2013 and ended in or around November 2013. In total, the FFA timesheets reflected that C.H. received 20 hours of independent tutoring and 25 hours of independent counseling. Parent C stated to your affiant that C.H. did not receive any services from Faulkner, FFA, or any individuals associated with FFA. Parent C also stated that she never received a Comp. Ed. Letter for C.H. Additionally, Parent C stated that the signature that appears on the FFA timesheets was not her signature. Your affiant queried DCPS's student records databases and did not identify a Comp. Ed. Letter for C.H.

24.     Based on your affiant's training and experience, Cogdell's use of her personal email account instead of her government email account when communicating with Faulkner and others suggests she was attempting to conceal her communications.

25.     On July 17, 2017, this Court issued a search warrant for information associated with SONOFTONYA@yahoo.com, an account believed to be used by Isaiah Johnson. Johnson is believed to have provided Faulkner and Charles E. Scott, another DCPS Comp. Ed. vendor, with the names of DCPS students eligible for Comp Ed. services and to have shared in the proceeds Faulkner and Scott wrongfully obtained by billing DCPS for Comp Ed. services that were never performed. Among emails in this account was a message dated October 19, 2013,

from the Subject Account to SONOFTONYA@yahoo.com.  Attached to the email were seven Comp Ed. Letters that were not signed by a DCPS CCM.  Your affiant found this email to be suspicious because Comp Ed. Letters are only valid if signed by a CCM and there is no apparent legitimate reason why Cogdell would use her personal email account to send invalid Comp. Ed. Letters to Johnson's personal email account.  Your affiant believes that this email evidences that Cogdell may have been involved in the scheme with Johnson, Faulkner and Scott, in part because some of the Comp Ed. Letters were submitted by Scott and Faulkner, along with some of their fraudulent invoices to DCPS.  When submitted to DCPS, the Comp Ed. Letters contained CCM signatures.

## BACKGROUND CONCERNING EMAIL

26. In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("email"), instant messenger, SMS and social networking products to the public.  Google allows subscribers to obtain email accounts at the domain names gmail.com, like the email account listed in Attachment A.  Subscribers obtain an account by registering with Google.  During the registration process, Google asks subscribers to provide basic personal information.  Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

27. A Google subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to

emails), and other files, Google Drive files, Google Documents, Google Talk chats, SMS, YouTube and other social networking products on servers maintained and/or owned by Google. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

28.   In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

29.   In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

30.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

## **CONCLUSION**

31.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

                    Respectfully submitted,

                    _____
                    Michael I. Jones
                    Special Agent
                    Office of the Inspector General
                    Government of the District of Columbia

Subscribed to and sworn to before me this _____ day of August, 2017

_____
HONORABLE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with SHALONDACOGDELL@GMAIL.COM that is stored at premises controlled by Google, a company that accepts legal service at 1600 Amphitheatre Parkway, Mountain View, California 94043.

**ATTACHMENT B**

**Particular Information to be Seized**

I.    **Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, webpages, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under Title 18, United States Code, Section 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

    a.    The contents of all emails associated with the account, from August 1, 2011 to September 30, 2016, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails;

    b.    The contents of all chat messages and logs associated with the accounts, including stored chat messages and logs;

    c.    The contents of all SMS messages and logs associated with the accounts, including stored SMS messages and logs;

    d.    The files and contents associated with the accounts related to Google services such as Google Drive, Google Docs, Google search history, Google bookmarks, Google Picasa files, Google play purchases, Google Sites, Google voice and voicemail, Google wallet, Google+, Google Orkut and YouTube videos.

  e. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

  f. The types of service used;

  g. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

  h. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and/or instrumentalities of violations of Title 18, United States Code, Sections 1343 (Wire Fraud), 1341 (Mail Fraud), 666 (Theft of Public Money, Property or Records), and 1028A (Aggravated Identity Theft) including for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Records and information relating to persons who created, used or communicated using the account in Attachment A, including records about their identities and whereabouts;

(b) Records and information relating to the creation, and/or incorporation or ownership of Fundamentals for Achievement, LLC ("FFA") or any other DCPS vendor;

(c) Records and information relating to communications between Cogdell and any other persons or vendors relating to District of Columbia ("DCPS") students eligible for Compensatory Education Services;

(d) Records and information relating to communications regarding prospective employment as a vendor, tutor, mentor, or any other position, for any person by Cogdell, Johnson, Scott, Faulkner, FFA or any company associated with Cogdell, Johnson, Scott or Faulkner;

(e) Records and information relating to communications regarding timesheets and invoices submitted and/or payment requested by FFA or any DCPS vendor from DCPS for alleged services rendered;

(f) Disposition of proceeds from the illegal activity;

(g) Steps taken in furtherance of the scheme;

(h) Communications between Cogdell and any other employee or agent of FFA;

(i) Communications with any individual or entity related to FFA or DCPS;

(j) Any and all evidence indicating in any way a motive to engage in criminal activity, such as promising money or gifts in exchange for the names of DCPS students eligible for the Compensatory Education program;

(k) Financial records and documents relating to assets or accounts accessed by Cogdell or others engaged in criminal conduct;

(l) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(m) Evidence indicating the email account owner's state of mind as it relates to the criminal activity under investigation;

(n) Identification of coconspirators, accomplices, and aiders and abettors in the commission of the above offenses.

**III.    Government procedures for warrant execution**

The United States government will conduct a search of the information produced by the Provider and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the Provider that does not fall within the scope of Section II and will not further review the information absent an order of the Court.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Google, Inc., and my official title is _____. I am a custodian of records Google, Inc. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Google, Inc., and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.  all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.  such records were kept in the ordinary course of a regularly conducted business activity of Google, Inc. and

c.  such records were made by Google, Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____    _____
Date                                                          Signature

1